**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE XUNLEI LIMITED SECURITIES LITIGATION | **Civil Action No. 1:18-cv-00467-RJS**<br><br>**Hon. Richard S. Sullivan** |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........1

STATEMENT OF FACTS ..........3

ARGUMENT ..........8

I. Pleading Standards Do Not Favor Dismissal ..........8

II. The Complaint Sufficiently Alleges That Defendants Violated §10(b) of the Exchange Act ..........10

A. The Complaint Sufficiently Identifies Defendants' Material Misrepresentations and Omissions ..........10

B. Defendants' Expert Report Does Not Support Dismissal ..........17

C. The Amended Complaint Alleges A Strong Inference of Scienter ..........18

D. The Amended Complaint Adequately Pleads Loss Causation ..........20

III. The Amended Complaint Adequately Alleges Section 20(a) Violations ..........21

CONCLUSION ..........22

**TABLE OF AUTHORITIES**

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98 (2d Cir. 2012) .......................10, 12

*Ashocroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................9

*Baena v. Woori Bank*, 515 F. Supp. 2d 414 (S.D.N.Y. 2007) ...............................................19

*Doubleline Capital LP v. Odebrecht Fin., Ltd.*, No. 1:17-cv-4576-GHW, 2018 U.S. Dist. LEXIS 133644 (S.D.N.Y. Aug. 8, 2018)................................................................. 14

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) .......................................................10, 21

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp.*, Inc., 343 F.3d 189 (2d Cir. 2003) .... 10

*Employees' Ret. Sys. v. Blanford*, 794 F.3d 297 (2d Cir. 2015) ........................................... 10

*Freudberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010)............................ 13

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) .................................................. 15

*In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65 (S.D.N.Y. 2017).............................. 19

*In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015)........................ 14, 19, 20

*In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148 (S.D.N.Y. 2008)................ 16

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................ 14

*In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419 (S.D.N.Y. 2009).................................... 15

*In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596 (S.D.N.Y. 2017) ...... 13, 14, 17, 19

*In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005)............................ 14

*In re KeySpan Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26173, (E.D.N.Y. 2003) ............... 20

*In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016) ....................... 17

*In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493 (S.D.N.Y. 2009)................. 9, 14, 17, 21

*In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 U.S. Dist. LEXIS 52084 (S.D.N.Y. Mar. 28, 2018) ........................................................................................ *passim*

*In re OSI Pharm.*, No. 04-CV-5505 (JS)(WDW), 2007 U.S. Dist. LEXIS 103845 (E.D.N.Y. Mar. 31, 2007) .........................................................................................21

*In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668 (S.D.N.Y. 1990).................................. 13

*In re Van Der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388 (S.D.N.Y. 2005)........ 14

*In re Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 528 (S.D.N.Y. 2016)................................. 22

*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ................................................. 12

*In re Xerox Corp. Sec. Litig.*, 165 F. Supp. 2d 208 (D. Conn. 2001) .................................... 14

*Lawrence v. Cohn*, 325 F.3d 141 (2d Cir. 2003) ........................................................................ 9

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568 (S.D.N.Y. 2016).......... 12

*Meyer v. Concordia Int'l Corp.*, 2017 U.S. Dist. LEXIS 119436 (S.D.N.Y. July 28, 2017) ..22

*Moon Joo Yu v. Premiere Power LLC*, 14 Civ. 7588 (KPF), 2015 U.S. Dist. LEXIS 102214 (S.D.N.Y. Aug. 4, 2015)........................................................................................ 10

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ..........................................................9, 18, 19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015)........................................................................................................................ 16

*Pa. Pub. Sch. Emples. Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341 (S.D.N.Y. 2012)............................................................................................................... 13, 17

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 741 F. Supp. 2d 474 (S.D.N.Y. 2010)........................................................................ 15, 16, 19

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)........................................................ 9, 10, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)................................ *passim*

*Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, 2014 U.S. Dist. LEXIS 109919 (S.D.N.Y. Aug. 8, 2014)........................................................................................................ 14

*Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457 (S.D.N.Y. 2013) ............................... 2, 17

Plaintiffs Tongyan Wang, Yuyan Jia and Peng Li hereby oppose the motion to dismiss filed by Defendants Xunlei Limited ("Xunlei") and Lei Chen ("Chen").

## PRELIMINARY STATEMENT

Defendants' motion engages in sleight of hand. It impermissibly focuses on alternative facts Defendants intend to prove at trial, while ignoring well-pleaded Amended Complaint allegations. Defendants' advancement of factual disputes does not demonstrate any pleading deficiency, and none exists. The Amended Complaint identifies with specificity each of the misleading statements, alleges facts demonstrating that Defendants were at least reckless in their statements to investors, and details the impact that the revelation of the truth had on Xunlei's stock price. That is all the law requires.

Xunlei is an internet services company based in China that circulated and facilitated the trading of a cryptocurrency called OneCoin (later renamed LinkToken), in defiance of Chinese regulations. This case arises out of material misrepresentations and omissions that Defendants made between October 10, 2017 and January 11, 2018, both dates inclusive, related to the unlawful promotion of OneCoin.

Less than a month after Chinese authorities banned initial coin offerings ("ICOs") and the circulation of virtual currencies, Defendants began to promote a cryptocurrency scheme that was functionally equivalent to the banned practices. Xunlei sold its cryptocurrency program to Chinese consumers as a wealth-generating scheme, whereby users could earn cryptocurrency by first investing in a hardware device sold by Xunlei called OneThing Cloud, then by turning over their computational resources to Xunlei. Xunlei also facilitated through its Wallet app the trading of OneCoin on third-party exchanges where OneCoin could be exchanged for other cryptocurrencies or hard currency.

Throughout the Class Period, Defendants' statements to American investors about Xunlei's cryptocurrency program were materially misleading. Defendants omitted to disclose the legal risks of Xunlei's OneCoin cryptocurrency program, including the fact that the program was functionally equivalent to an illegal ICO, because it exchanged cryptocurrency as consideration for tangible financial benefits to Xunlei (for which Xunlei would otherwise have had to exchange hard currency). Even worse, Defendants affirmatively misrepresented full regulatory compliance.

Investors learned the truth about Xunlei's OneCoin promotion when a whistleblower came forward, and the self-regulatory body set up by Chinese ministries condemned the program. On November 16, 2017, Xunlei's Senior Vice President, Yu Fei, admitted that the OneCoin program was a "disguised ICO" and an "illegal fund-raising scam." Its illegality was confirmed by the National Internet Finance Association of China ("NIFA"), which publicly censured Xunlei on January 12, 2018 for circulating a "disguised ICO," and luring users into the trade of banned cryptocurrencies with "frequent promotional activities and publishing of trading tutorials." Xunlei's stock dropped sharply after each of these disclosures.

Unable to squarely address the damning facts alleged in the Amended Complaint, Defendants impermissibly raise credibility disputes and contradict factual allegations identifying the tangible financial benefits Xunlei received from cryptocurrency promotion. *See* Defs.' Mem. at 15-20. While Defendants are free to raise such disputes at trial should they come up with any admissible evidence, at this stage the well-pleaded Amended Complaint allegations must be taken as true. *See, e.g., Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) ("material factual disputes . . . cannot be resolved on a motion to dismiss").

Defendants' reliance on a paid declaration from a Chinese law professor is equally inappropriate. As an initial matter, Defendants' law professor opines that under Chinese law "it is

not fully clear what amounts to an ICO" (*see* ECF No. 35, ¶ 12). If so, then his opinion is an admission of a risk that Defendants never disclosed to investors when hyping Xunlei's cryptocurrency program. More importantly, as alleged in the Amended Complaint and admitted by Xunlei, the appropriate Chinese self-regulatory body has already determined that Xunlei's cryptocurrency scheme was "essentially a financing activity and a form of disguised ICO." ¶ 10. That Defendants now appear to disagree with Chinese authorities based on the opinion of a paid "expert" only serves to show a material factual dispute to be resolved by the trier of fact. It does not show a pleading deficiency.

Because the Amended Complaint meets all pleading requirements, Defendants' motion should be denied in full.

## STATEMENT OF FACTS

Xunlei is an internet services company based in China. Am. Compl. at ¶ 22. Xunlei's original business model was to provide download acceleration services used mainly to download pirated content. ¶ 23. However, after the Chinese government cracked down on illegal downloading, ¶ 23, the Company began to focus on its content delivery network ("CDN") business. ¶ 25. A CDN distributes internet content through a network of local nodes, shortening the distance between an internet server and an end user. *Id.*

To avoid having to spend its own capital to build out nodes for the CDN business, the Company began in 2017 to promote an internet device called Xunlei Zhuanqian Bao, or ZQB, which means "Xunlei Make Money Treasure." ¶ 25. The ZQB device was a hardware box that created a private cloud for storing a user's own files, in exchange for serving as a node for the Company's CDN offerings. *Id.* This action involves the next generation of the ZQB device, which married the CDN business to cryptocurrency mining.

Cryptocurrencies are currencies that exist only digitally without a central issuing or regulating authority, and rely on a decentralized system to record transactions, issue new units, and prevent the prospect of counterfeiting through cryptography. ¶ 26. Cryptocurrencies threaten a government's efforts to control currency, because they can be used to evade restrictions on monetary transfers. *Id.* According to NIFA, a national self-regulatory organization formed by multiple Chinese government ministries, commissions, and the People's Bank of China, cryptocurrency transactions, including ICOs, threaten to "disrupt[] social and economic order and creat[e] significant risks." *Id.*, ¶ 61.

On September 4, 2017, or over a month before the beginning of the Class Period, the People's Bank of China, Central Network Information Industry, Ministry of Industry and Information Technology, China Securities Regulatory Commission, China Banking Regulatory Commission, and China Insurance Regulatory Commission jointly issued a ban on "all token fundraising." This ban applied to the following activities:

- "The acts of illegal fund-raising, pyramid schemes and coin-vouchers, ***and circulating a token not issued by the monetary authority or 'virtual currency' are considered criminal activities. . . .***"
- "From the date of this announcement, any so-called token financing transaction platform must not engage in the exchange of money, tokens, or 'virtual currency' with each other. . . ."
- "Each financial institution and non-bank payment institution shall not directly or indirectly provide products for the issuance of token financing and 'virtual currency.'"

¶ 28.

In the same month that Chinese regulators banned the circulation of virtual currencies, Xunlei launched its own cryptocurrency scheme in defiance of the ban, centered around the successor to its ZQB device, called "OneThing Cloud." ¶ 25. OneThing Cloud is a network linked storage device that allows users to share online storage remotely. *Id.* It is also a "mining machine" that allows users to share their idle computing resources with Xuneli's CDNs, in exchange for Xunlei's own cryptocurrency. ¶¶ 25, 29.

On October 12, 2017, Xunlei announced that OneThing Cloud owners could leverage their excess bandwidth, storage and computing power to "mine" a new cryptocurrency called OneCoin (WanKeBi in Chinese or WanKe Coin), which was later renamed LinkToken (LianKe in Chinese). ¶ 29. The Company also created a Wallet app for these cryptocurrencies, which was initially called OneCoin Wallet (WanKeBi Qianbao in Chinese), and later renamed LinkToken Pocket (LianKe KouDai in Chinese). *Id.* OneCoin was functionally equivalent to a traditional ICO because it required an initial investment by the user, granting the user cryptocurrency, which could then be used to purchase items from Xunlei instead of using hard currency or withdrawn and traded for hard currency on exchanges. ¶ 30.

| **Traditional ICO** | **Xunlei's Disguised ICO** |
|---|---|
| a. Investor pays issuer for cryptocurrency | 1. Investor pays Xunlei or a distributor to buy Xunlei's OneThing Cloud hardware device. |
| b. Investor receives cryptocurrency | 2. Via OneThing Cloud hardware device, investor receives OneCoin cryptocurrency |
| 3. Investor can trade cryptocurrency on external exchanges | 3. Investor can trade OneCoin on external exchanges |

Xunlei structured the use of OneCoin to mimic the economic aspects of traditional cryptocurrencies like BitCoin. ¶ 32. The Company offered "prepurchase" incentives to create a strong base of initial users in 2017. *Id.* As with most cryptocurrencies, Xunlei gave greater

rewards to "its earliest participants." *Id.* The Company also set limits for the maximum amounts of OneCoin that could be issued per day to 1.6 million, and announced that no more than 1.5 billion OneCoin would be issued. *Id.* These features were intended to, and did, create supply constraints that encouraged speculation in OneCoin. *Id.*

Xunlei lured users to buy the OneThing Cloud device by promising monetary returns from mining its cryptocurrency. ¶ 31. For example, Xunlei's onethingcloud.com website referred to its program as a "private gold mine" that "make[s] money," enticing users with promises that "a reward worth one billion yuan is waiting for you to come and achieve the dream of 'making money' while lying down." *Id.* Xunlei also referred to OneCoin using the Chinese word for currency ("bi"), and emphasized that users could "Get[] richer" if they mined OneCoin. *Id.*

The OneCoin Wallet app encouraged speculation of the cryptocurrency, and was designed to facilitate the illegal trading of the currency on external exchanges. *Id.* ¶ 33. Xunlei built a withdrawal feature into the Wallet app so that OneCoin could be taken out of the Wallet and illegally traded on external platforms for hard currency like yuan or other cryptocurrencies such as BitCoin and Ethereum. ¶ 33. As the Amended Complaint details, unlawful OneCoin speculation was widespread. For example, during the Class Period, OneCoin could be traded on a third-party trading platform known as Fatbc for Bitcoin, Ethereum and the Chinese Yuan. ¶ 34. It also could be traded on the exchange, cex.com, and on LinkEX, the "Leading OTC Digital Currency Marketplace." ¶¶ 34-35. Speculative trading on these platforms increased the value of OneCoin by 80-fold in the Class Period, and dramatically increased the price of the OneThing Cloud device as well. *Id.*

OneCoin was also available for trading through chat groups, including China's wildly popular QQ chat platform, and on decentralized matching platforms like playwkc.com. ¶¶ 38-39.

Specific QQ chat groups provided detailed instructions on how to trade OneCoin, and tutorials with step-by-step instructions on exchanging OneCoin in exchange for Bitcoin, Ethereum, or yuan were widely available on the internet. ¶¶ 38, 40. These tutorials all relied on the withdrawal function that Xunlei built into its Wallet app, and maintained throughout the Class Period. *Id.*; *see also* ¶ 46 (Company admission that OneCoin could be "extracted" and "transferred" from the Wallet app) and ¶ 41 (report that Xunlei did not place any transfer restrictions from the Wallet app until January 25, 2018, several weeks after the end of the Class Period).

On November 28, 2017, after an internal dispute about Xunlei's illegal cryptocurrency promotion, Xunlei stated on a Chinese social media account that its partially-owned subsidiary Shenzhen Xunlei Big Data Information Services Company Ltd. ("Xunlei Big Data") was no longer authorized to use the Company's trademarks and branding. ¶ 55. Yu Fei, then a ***Senior Vice President of Xunlei*** and Chairman of Xunlei Big Data, explained tthat Xunlei's actions were retaliation for her refusal to support "OneCoin's illegal activities." *Id.* Yu Fei also called Chen's OneCoin activities "criminal," explaining that the OneCoin scheme was "in violation of 7 ministries' documents, takes advantage of illegal exchanges, illegal group pyramid schemes, is a disguised ICO, and is an illegal fund-raising scam." *Id.* On this news, the Company's ADS shares plummeted from $21.01 to $18.58, a drop of approximately 11.6%. ¶ 57. An article published on Technode concluded that the drop was caused by Yu Fei's disclosures. *Id.*

On November 29, 2017, Xunlei issued a cryptic press release acknowledging that OneCoin had been wrongfully traded on third party platforms. ¶ 59. This raised more questions than it answered and, according to a commentator cited in the Amended Complaint, drove "some investors to the exits." *Id.* As a result, the Company's ADS price further declined by $5.78 on November 29, 2017 to close at $12.80 or a drop of approximately 31.1%. *Id.*

On December 9, 2017, the Company changed the name of OneCoin to LinkToken, and changed the name of the Wallet app from OneCoin Wallet to LinkToken Pocket. ¶ 60. The Company also pledged to work with the Chinese authorities to crackdown on "illegal trading," and to limit withdrawal functionality to users who had registered under a real name. *Id.* Investors reacted positively to this news, and the Company's ADS price rose by 29% from $11.98 to $15.50 when trading resumed on December 11, 2017. *Id.*

On January 12, 2018, NIFA issued a "Risk Alert" that condemned OneCoin/LinkToken as a "potentially risky model that warrants vigilance" and criticized the Company for operating a disguised ICO that was "essentially a financing activity":

> Since last October, a series of "virtual digital assets" have been issued, including Lianke, LLT, and BFC Points. ***In the case of Lianke issued by Xunlei, for example, the issuing company in effect substitutes Lianke for the duty to pay back project contributors with legal tender, making it essentially a financing activity and a form of disguised ICO. In addition, with frequent promotional activities and publishing of trading tutorials, Xunlei has lured many citizens without sound discernment into IMO activities.***

¶ 61.

On this news, the Company's ADS price declined $6.27 from a close on January 11, 2018 at $22.90 per ADS, to close at $16.63 per ADS on January 12, 2018, a drop of approximately 27.38%. ¶ 62.

## ARGUMENT

### I. Pleading Standards Do Not Favor Dismissal

For purposes of "a Rule 12(b)(6) motion to dismiss a §10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "A complaint should not be dismissed when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashocroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim under §10(b), a plaintiff must "allege the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff." *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003). Defendants, here, challenge only the pleading of falsity, scienter and loss causation. As discussed below, the Amended Complaint easily pleads these elements.

While the PSLRA and Rule of Civil Procedure 9(b) require more detailed pleading than Rule 8, they do not elevate pleading burdens to the extent suggested by Defendants. The particularity requirements of the PSLRA and Rule 9(b) simply require that securities litigation plaintiffs "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). The Amended Complaint here does that with respect to each allegation.

Similarly, though the PSLRA requires that a plaintiff allege facts supporting a strong inference of scienter, *see* 15 U.S.C. §78u-4(b)(2), the inference need not be "irrefutable, *i.e.*, of the 'smoking gun' genre, or even the most plausible of competing inferences." *Tellabs*, 551 U.S. at 324. Instead, a complaint alleges a strong inference of scienter so long as a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Scienter may be established by showing either conscious misbehavior or recklessness, and can be satisfied by circumstantial evidence. *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). Scienter of executives acting within the scope of employment is imputed to the corporation. *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493,

516 (S.D.N.Y. 2009). Significantly, "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically" after accepting all factual allegations as true. *Tellabs*, 551 U.S. at 326.

"Loss causation . . . is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp.*, Inc., 343 F.3d 189, 197 (2d Cir. 2003). To establish loss causation, a plaintiff is required only to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

## II. The Complaint Sufficiently Alleges That Defendants Violated §10(b) of the Exchange Act

### A. The Complaint Sufficiently Identifies Defendants' Material Misrepresentations and Omissions

The Amended Complaint sufficiently identifies the specific false statements and material omissions at issue, states where and when each statement was made and explains why each is misleading. *See Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012); *Rombach*, 355 F.3d at 170. That is all the law requires. *Id.*; *see also Employees' Ret. Sys. v. Blanford*, 794 F.3d 297, 306-08 (2d Cir. 2015); *Moon Joo Yu v. Premiere Power LLC*, 14 Civ. 7588 (KPF), 2015 U.S. Dist. LEXIS 102214, at *24 (S.D.N.Y. Aug. 4, 2015). As is detailed in the Amended Complaint, Defendants made the following misrepresentations and omissions:

- A press release Xunlei issued on October 10, 2017 misleadingly touted the "OneCoin Rewards Program," and encouraged consumers to invest in the purchase of the OneThing Cloud device to reap OneCoin (WanKeBi in Chinese) and transfer computing resources to Xunlei in exchange for cryptocurrency, but omitted that (a) Xunlei's OneCoin promotion violated Chinese regulations; (b) offering OneCoin via the sale of OneThing Cloud devices was a disguised ICO; and (c) even if

classified as an Initial Miner Offering, Xunlei's promotion was economically equivalent to a banned ICO. ¶¶ 42-43.

- An October 16, 2017, statement by Xunlei subsidiary OneThing Technology Co. on behalf of Xunlei and Defendant Chen, falsely denied that OneCoin was a banned ICO, falsely denied that Xunlei's cryptocurrency could be purchased or traded for cash, and falsely stated that OneCoin's use was limited "to the exchange of Xunlei products." ¶¶ 44-45.
- In a November 16, 2017, press release announcing Xunlei's results for the third quarter and nine months ended September 30, 2017, which was filed with the United States Securities and Exchange Commission ("SEC") as an attachment to Form 6-K, Defendant Xunlei and Chen misleadingly touted the "innovative cloud computing products" and "emerging blockchain technology," involved in the OneCoin cryptocurrency program, and stated that the Company's "crowd-sourced computing technology utilizes idle computing power including bandwidth, storage and CPU from individual bandwidth contributors to make internet more affordable to everyone." ¶ 47. These statements omitted that: (a) Xunlei's OneCoin promotion violated Chinese regulations; (b) offering OneCoin via the sale of OneThing Cloud devices was a disguised ICO; (c) even if classified as an Initial Miner Offering, Xunlei's promotion was economically equivalent to a banned ICO; and (d) as a result, Xunlei's results and business prospects were materially inflated.
- A November 16, 2017, conference call with investors in which Defendants Xunlei and Chen described the OneThing Cloud as an incentive program with a blockchain based "crypto token" reward, while omitting that: (a) Xunlei's OneCoin promotion

violated Chinese regulations; (b) offering OneCoin via the sale of OneThing Cloud devices was a disguised ICO; and (c) even if classified as an Initial Miner Offering, Xunlei's promotion was economically equivalent to a banned ICO. ¶¶ 49-50.

- On the November 16, 2017 conference call, Xunlei and Chen also falsely denied that the Company had any plans to "monetize" OneCoin, when in fact Xunlei had already monetized OneCoin by using it as payment for resources for which it would otherwise have to spend hard currency to obtain. ¶¶ 51-52.
- Even worse, on the November 16, 2017 conference call, Xunlei and Chen affirmatively misrepresented that they "follow all the local regulations and laws" and "conduct business … in a manner that is honest and responsible, and meet[s] all the regulations," when in fact Xunlei did not follow all regulations and laws, and the OneCoin program was functionally equivalent to an illegal ICO. ¶¶ 53-54.

Unable to dispute that the Amended Complaint identifies these misrepresentations and omissions with the specificity the law requires, *see Anschutz Corp.*, 690 F.3d at 108; *Rombach*, 355 F.3d at 170, Defendants instead argue that they were not required to self-report their misconduct to investors. *See* Defs.' Mem. at 18. Defendants' argument misses the point. "Once a company speaks on an issue or topic, there is a duty to tell the whole truth, even when there is no existing independent duty to disclose information on the issue or topic." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016). Consequently, once Defendants started touting the OneCoin cryptocurrency scheme to investors, they were obligated to disclose all material information necessary to avoid rendering their statements misleading. *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 579 (S.D.N.Y. 2016); *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 U.S. Dist. LEXIS 52084, at *12-13 (S.D.N.Y. Mar. 28, 2018).

By omitting to disclose the true nature of its OneCoin cryptocurrency promotion, while affirmatively but falsely assuring investors of regulatory compliance, Defendants rendered their statements to investors materially misleading. "[A] statement is misleading if a reasonable investor would have received a false impression from the statement." *Freudberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010). This determination is usually reserved for the trier of fact. *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 677 (S.D.N.Y. 1990). "Thus, the matter must go to the jury unless the Court, drawing all reasonable inferences in favor of the plaintiff, determines that reasonable minds could not differ on the question of whether the statements alleged in the complaint were misleading in light of the circumstances under which they were made." *Id.*

Here, Xunlei's statements made between October 10, 2017 and November 16, 2017 were designed to and did mislead investors to believe that the Company's cryptocurrency program was legitimate and compliant. ¶¶ 42-55. As alleged in the Amended Complaint, Defendants repeatedly volunteered information to investors about OneCoin, but failed to tell the whole truth. Defendants' deliberate half-truths are actionable, even if they touch upon issues involving regulatory compliance. *See Mylan*, 2018 U.S. Dist. LEXIS 52084, at *17 (finding that company had duty to disclose facts about price fixing agreements and the miscalculation of rebates because company chose to speak about pricing and volume of products); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 612 (S.D.N.Y. 2017) (company had duty to disclose facts about ongoing misconduct that cast doubt on its claims regarding independence because company chose to provide details about its business model); *Pa. Pub. Sch. Emples. Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 352 (S.D.N.Y. 2012) (defendant bank had a duty to disclose its breach of mortgage representations when it chose to speak about contractual liabilities and warranties

concerning mortgage-backed securities).

The cases Defendants cite do not remotely support their attempt to evade the well-pleaded misrepresentations in the Amended Complaint. Defs.' Mem. at 18-21. None of Defendants' cited cases involved, as here, the admission by a senior company executive that the Company engaged in illegal activity, or the pronouncement of a self-regulatory organization singling out a company as an example of illegal conduct. ¶¶ 56, 61. Such circumstances sufficiently allege falsity. *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 729-30 (S.D.N.Y. 2015) (falsity established, in part, by testimony of third party concerning the regulatory implications of a civil investigation demand)*; In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d at 508 (falsity established, in part, by fact that ratings agency was warned regarding errors in ratings).

Defendants' reliance on *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) and similar cases is misplaced. Defs.' Mem. at 18-19. The Amended Complaint does not, as those cases did, allege that Xunlei should have "accuse[d] itself of wrongdoing." *Citigroup*, 330 F. Supp. 2d at 377. Instead, the Amended Complaint contends that when Defendants volunteered to speak about OneCoin they should have done so honestly and without misleadingly omitting material adverse information. *See Mylan*, 2018 U.S. Dist. LEXIS 52084, at *17; *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d at 612.[1]

Defendants' truth-on-the-market argument likewise fails to undercut falsity. Defs.' Mem.

[1] *See Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, 2014 U.S. Dist. LEXIS 109919, at *33 (S.D.N.Y. Aug. 8, 2014) (rejecting argument that requiring truthful, non-misleading disclosure is tantamount to requiring a company to "report[] itself to the authorities."); *see also Doubleline Capital LP v. Odebrecht Fin., Ltd.*, No. 1:17-cv-4576-GHW, 2018 U.S. Dist. LEXIS 133644, at *81 (S.D.N.Y. Aug. 8, 2018); *In re Van Der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400-01 (S.D.N.Y. 2005); *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 617 (S.D.N.Y. 2005); *In re Xerox Corp. Sec. Litig.*, 165 F. Supp. 2d 208, 217-18 (D. Conn. 2001).

at 18. Truth-on-the-market can provide a defense where truthful information is conveyed to the market "with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (internal quotation marks and citation omitted). Truth-on-the-market "is intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b) complaint for failure to plead materiality." *Id.*

Here, Defendants did not disclose the truth at all. They did not disclose that Xunlei had facilitated illegal trading of OneCoin, or that its OneCoin program was a disguised ICO. In fact, Defendants did not even acknowledge what their "expert" now concedes: that it was "not fully clear what amounts to an ICO" at the time, despite Defendants' affirmative assurances of regulatory compliance. *See* ECF No. 35, ¶ 12. And, when a whistleblower tried to tell the truth, Defendants retaliated against her and vehemently denied any wrongdoing. ¶ 59

Even worse, the "publicly available" information Defendants cite was primarily sporadic Chinese-language internet postings "published in other contexts" that "may not be considered to be part of the information that was reasonably available to investors." *See In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, at 438 (S.D.N.Y. 2009) (internal citations and quotations omitted); *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 741 F. Supp. 2d 474, at 485-86 (S.D.N.Y. 2010) (rejecting claim that facts were disclosed in press releases and articles in industry publications because defendants raised a "truth on the market" defense, which is not appropriate to raise at the pleading stage).

Defendants' additional arguments regarding three specific statements alleged in the Amended Complaint show no infirmity. *See* Defs.' Mem. at 19. The October 16, 2017 statements are alleged with the particularity Rule 9(b) requires. The Amended Complaint identifies the speaker (Xunlei subsidiary OneThing Technology Co., on behalf of Xunlei), the place (China),

approximate date (October 16, 2017), and content of the misrepresentations, as well as why they were materially false and misleading when made. These allegations give Defendants fair notice of the claims alleged. Absolute precision is not required. *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, at 162 (S.D.N.Y. 2008). Nor is the affirmative misrepresentation identified protected as a statement of opinion. Defendants here did not soften their assurance of compliance with language indicating an uncertain belief as in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1328 (2015). To the contrary, Defendants here were certain and definite in their assurance to investors. Regardless, even if they had couched the assurance as an opinion, Defendants would not be shielded from liability because they omitted material, known information undermining the conclusion asserted. *Id.* at 1329-1331.

Defendants' attempt to explain away Chen's false statement regarding monetization, *see* ¶ 51, as a mere "semantic difference[]" is equally misplaced. Defs.' Mem. at 20. Defendants were required to provide statements that were semantically true, not semantically different from the truth. By definition, the latter has the propensity to mislead investors. Defendants' alternative explanation regarding Xunlei's monetization efforts does not demonstrate truth-on-the-market and is not entitled to any weight at this stage of the proceedings. *Arbitron, Inc.,* 741 F. Supp. 2d 474, 485-86.

Defendants' arguments regarding Chen's definitive November 20, 2017 assurances of legal compliance fail for the same reason that the October 16, 2017 assurances fail. Neither was cast as opinion, and neither disclosed material, known adverse information. Moreover, Chen's statements about compliance definitely do not amount to "puffery" because Chen spoke about a significant aspect of the Company's business model, and the statements imply certainty because Chen stated that he worked closely with Chinese authorities to ensure that the Company followed all local laws

and regulations. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d at 611; *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d at 509.

**B. Defendants' Expert Report Does Not Support Dismissal**

This is not a case hinging on the interpretation of foreign law. The only relevant regulatory issue has already been determined by the governing Chinese self-regulatory organization, which found Xunlei's promotion of OneCoin to be an unlawful disguised ICO. ¶ 61. Defendants did not challenge the NIFA determination, instead opting after the Class Period to eliminate the speculative features of their OneCoin program criticized by NIFA. ¶ 60.

Defendants' expert cannot provide any insight into Defendants' state of mind, or the reasons why NIFA singled out Xunlei as an example of unlawful cryptocurrency promotion. "[A]n expert's testimony on the intent, motives or states of mind of corporations, regulatory agencies and others is inadmissible." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 479 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). Moreover, the expert's assertion of facts outside the pleadings is not appropriate at this juncture. *See VanDongen v. CNinsure.*, 951 F. Supp. 2d at 470. That Defendants' Rule 44.1 expert disagrees with NIFA, the governing self-regulatory organization, shows at most a factual dispute for trial. *See Bank of Am. Corp.*, 874 F. Supp. 2d at 352-53 (defendants' disagreement with prior court decisions regarding a mortgage registry "pose a question of fact that cannot properly be decided on a motion to dismiss."). However, Defendants' expert report is relevant in one respect. It concedes a legal uncertainty that Defendants hid from investors, strongly suggesting that Defendants were at least reckless. Defendants' expert attests that Chinese law was not sufficiently certain to support the definitive assurances that Defendants provided to American investors regarding legal compliance. *See* ECF No. 35 at ¶ 12 (under Chinese law "it is not fully clear what amounts to an ICO"); *id.* at

¶ 14 ("Due to the lack of clarity over the definition of ICO, Notification No. 99 states that rectification will be carried out with respect to ICOs on a case-by-case basis."); and *id.* at ¶ 18 ("The definition of securities is not fully clear in China."). Thus, if anything, the expert report demonstrates additional evidence that Plaintiffs' claims are well-pleaded.

### C. The Amended Complaint Alleges A Strong Inference of Scienter

Scienter allegations need not be "of the 'smoking gun' genre", as long as there are cogent and at least as compelling as any nonculpable explanation that can be drawn from complaint allegations. *Tellabs*, 551 U.S. at 324. A plaintiff may demonstrate scienter by showing either intentional misrepresentation or recklessness. *Novak*, 216 F.3d at 308. A defendant is reckless if he or she engages in deliberately illegal behavior or knows facts or had access to information suggesting that the public statements were not accurate or failed to check information they had a duty to monitor. *Id.* at 311.

The Amended Complaint not only meets, but exceeds the scienter pleading standard. Xunlei and Chen intentionally continued a program they were warned was illegal, knew facts and had access to information indicating that the circulation of virtual currencies like OneCoin was banned in China, and failed to check information regarding the legality of OneCoin. Specifically, Xunlei knew that the Chinese ban issued on September 4, 2017 in no uncertain terms banned the circulation of tokens or virtual currencies and considered such activities to be criminal. ¶ 28. Despite this ban, Xunlei structured OneCoin to mimic the structural characteristics of other cryptocurrencies, and the economic function of a banned ICO. Xunlei even facilitated trading of OneCoin on third party exchanges by building and advertising a withdrawal feature in its Wallet app. ¶¶ 29-41.

That Xunlei knew its activity was illegal was conceded by Xunlei's whistleblower, Yu Fei,

a Senior Vice President of Xunlei at the time. *See In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 90 (S.D.N.Y. 2017) (inference of scienter raised by management level employees can be imputed to corporation even if admission is not made by the individual defendant who made a materially false statement) *see also In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d at 729-30. The fact that Yu Fei directly told Xunlei and Chen that they were circulating a "disguised ICO" and an "illegal fundraising scam" "allow[s] for the inference that [Xunlei] could not have believed the veracity of its legal compliance statements." *Id.* In addition, Xunlei's decision to retaliate against Yu Fei's whistleblower actions creates an additional inference of scienter. *See Baena v. Woori Bank*, 515 F. Supp. 2d 414, 421 (S.D.N.Y. 2007) (cover ups are strong circumstantial evidence of scienter).

Chen's own statements also confirm his scienter. To convince investors to ignore whistleblower warnings and instead accept his promise that Xunlei had complied with applicable laws and regulations, Chen assured investors that he was "work[ing] closely with the regulatory authorities in China . . ." ¶ 53. Either he was working closely with applicable regulators, in which case he would have known that Xunlei's OneCoin program skirted the law, or he was not, in which case his false assurance was a deliberate attempt to mislead investors. *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d at 620-21; *Arbitron, Inc.*, 741 F. Supp. 2d 474, 485-86. Moreover, even if Xunlei and Chen were not certain that OneCoin was unlawful, Chen's definitive assurances of legal compliance were reckless in light of the legal uncertainty Defendants' own expert concedes. *See Novak*, 216 F.3d at 311; *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d at 732-33.[2]

[2] In light of the fact that even Defendants' own expert concedes that legal uncertainty could not support the definitive compliance assurances that Defendants made to American investors, the fact that a few commentators expressed doubts about the illegality of the OneCoin program, does not give rise to a plausible, let alone compelling, competing inference. *See Mylan.*, 2018 U.S. Dist. LEXIS 52084, at *39 (rejecting Mylan's argument that complaint failed to plead scienter based on the complexity of rules and advice the company received from regulators because these defenses were "appropriately the subject of

By itself, any one of these facts might be sufficient to allege a strong inference of scienter. Together, they unquestionably support an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. "It [also] requires no stretch of the imagination to infer that, due to [Chen's] position at the company, and the importance of [OneCoin] to [Xunlei's] operations, Defendants knew facts or had access to information suggesting that their public statements... were not accurate." *Mylan*, 2018 U.S. Dist. LEXIS 52084, at *34-35 (internal citations and quotation marks omitted).

**D. The Amended Complaint Adequately Pleads Loss Causation**

Loss causation is sufficiently alleged by "the existence of cause-in-fact on the ground that "(a) the market reacted negatively to a corrective disclosure of the fraud; or (b) that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *BioScrip*, 95 F. Supp. 3d at 733. Here, the Amended Complaint adequately pleads both types of loss causation. On the day that Xunlei Big Data and Yu Fei accused Defendants of circulating a "disguised ICO" and operating an "illegal fund-raising scam," the Company's ADS price declined precipitously from the prior day close of $21.01 to $18.58 or a drop of approximately 11.6%. ¶¶ 56-57.

On November 29, 2017, Xunlei issued a cryptic press release announcing that it would take preventive measures to comply with all relevant laws and government regulations, but conceding that OneCoin might be unlawfully traded on third party platforms (speculation enabled by Defendants' inclusion of a withdrawal feature in function Wallet app). ¶ 59. On this news, investors began to head for "the exits," and Xunlei's stock price declined by over 31%. *Id.* On

discovery."); *In re KeySpan Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26173, at *45-47 (E.D.N.Y. 2003) (rejecting defendants' alternative explanations regarding why they did not reveal the problems and losses because "a motion to dismiss is not a trial.").

January 12, 2018, NIFA excoriated the Company for circulating a "disguised ICO," "making it essentially a financing activity," and accused the Company of luring citizens with "frequent promotional activities and publishing of trading tutorials." ¶ 61. On this news, the Company's ADS price declined by over 27%. ¶ 62. These allegations are sufficient at this stage to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms., Inc.*, 544 U.S. at 347.

Defendants' argument that the Amended Complaint fails to plead loss causation because the truth was already on the market lacks merit. Defs.' Mem. at 24. Yu Fei's public condemnation of Xunlei and Chen was the first time the market learned about the Company's alleged illegal activities, and the market immediately expressed concerns about the OneCoin program. "All that is required at this stage is a showing by Plaintiffs that Defendants' misstatements concealed something from the market, and that its disclosure negatively affected the value of the security." *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d at 512. Moreover, a truth on the market defense is insufficient to undermine loss causation at the pleadings stage. *In re OSI Pharm.*, No. 04-CV-5505 (JS)(WDW), 2007 U.S. Dist. LEXIS 103845, at *42-45 (E.D.N.Y. Mar. 31, 2007).

**III. The Amended Complaint Adequately Alleges Section 20(a) Violations**

Defendants do not challenge that Chen was a "control person," but incorrectly assert that the Amended Complaint fails to plead "culpable participation." Defs.' Mem. at 25. However, the Amended Complaint alleges that Chen dominated the Company's operation and management, participated in the design and promotion of the OneCoin program, claimed to understand the legal restrictions on ICOs, and was aware of adverse non-public information about the OneCoin program. ¶ 84. These facts are sufficient to plead "culpable participation." *See Meyer v. Concordia Int'l Corp.*, 2017 U.S. Dist. LEXIS 119436, at *29 (S.D.N.Y. July 28, 2017); *In re Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 528, 543 (S.D.N.Y. 2016).

## CONCLUSION

Plaintiffs' Amended Complaint alleges serious claims substantiated by detailed factual allegations. While Defendants may have counter-arguments to raise at trial, they identify no pleading defects. Accordingly, Defendants' motion to dismiss should be denied in its entirety, and the parties directed to proceed to discovery without further delay.

DATED: September 28, 2018

**POMERANTZ LLP**

/s/ *Omar Jafri*______________

Patrick V. Dahlstrom (*pro hac vice*)
Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
jbsilverman@pomlaw.com
ojafri@pomlaw.com

*Lead Counsel*